UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WELLS FARGO BUSINESS CREDIT,
INC.,

    Plaintiff,

    v.

DOVEBID VALUATION SERVICES,
INC.,

    Defendant.

No. 03 C 7583
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

Defendant, Dovebid Valuation Services, Inc., moves for summary judgment on Count II[1] of Plaintiff Wells Fargo Business Credit, Inc.'s ("WFBCI") negligent misrepresentation claim. I previously granted Defendant's Motion for Partial Summary Judgment with respect to Count I, Plaintiff's breach of contract claim. For the following reasons, Defendant's Motion for Summary Judgment is denied.

**II. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Plaintiff Wells Fargo Business Credit, Inc. previously filed a two-count complaint on April 11, 2003. I granted Defendant Dovebid Valuation Services, Inc.'s Partial Motion for Summary Judgment with respect to Count I, the breach of contract claim and held that no damages could exist for negligent misrepresentation as to the 2001 appraisal on September 18, 2008. The only remaining claim is Count II, the negligent misrepresentation claim with respect to the 2000 appraisal. In my previous ruling I stated that damages on this claim would be limited to out-of-pocket expenses, which I determined to be $2.2 million.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

**III. PRELIMINARY ISSUES**

When it was filed, I summarily denied Dovebid's Motion to Strike Portions of WFBCI's Rule 56.1 Statement of Additional Facts because I would be reviewing Dovebid's responses to WFBCI's statement in light of all of the facts alleged. In light of the entirety of the record, I am

2

striking WFBCI's statements of facts Nos. 3, 4, 5, 7, 9, 10, 12, and 18 to the extent that these statements allege that WFBCI actually read and relied on the 2000 Appraisal, as these statements mischaracterize the cited supporting materials.

## IV. STATEMENT OF RELEVANT FACTS

I have addressed the facts in this case at great length in my previous ruling, *Wells Fargo Business Credit, Inc. v. Dovebid Valuation Services, Inc.*, No. 03 C 7583, 2008 WL 4324231 (N.D. Ill. 2008). I will not recycle that text here, but rather provide a brief overview for purposes of the motion before me.

On March 7, 2002, Stelax[2] went into receivership in the United Kingdom and the net value realized from the disposition of equipment in August 2003 was for much less than Dovebid Valuation Services, Inc. ("Dovebid")[3] had previously valued it. As a result, Wells Fargo Business Credit, Inc. brought forth a negligent misrepresentation claim, Count II of the April 11, 2003 complaint.

In January 2000, Bank of America ("BOA") contacted Dovebid to get an appraisal of Stelax, including their equipment and assets. On February 29, 2000, Dovebid sent BOA the 2000 Appraisal ("Appraisal") of Stelax, which included an orderly liquidation value of equipment and a forced liquidation value of equipment. The language in the Appraisal stated:

> Nothing contained in this appraisal report shall be considered a warranty or guarantee as to the actual sale results of the listed machinery and equipment. The value(s) herein reflect[s] our unbiased professional opinion of value as of the

---

[2] Stelax is a United Kingdom corporation that operated a rebar manufacturing facility in South Wales. On June 30, 2000, Bank of America entered a loan with Stelax after Dovebid provided an appraisal of the company, the 2000 appraisal.

[3] The valuation at issue here was performed by a company that Dovebid later purchased. Because there is no dispute as to this fact, I disregard this fact in order to simplify the narrative.

> appraisal date and does not apply to any past or future dates . . . .This report has been intended for use by the purchaser. Others intending to use this report must do so with the understanding that no warranty or guarantee [has] been purchased by the owner of the report through the fee paid to [Dovebid] . . . . Our opinion of the estimated gross amount expressed in terms of dollars which the subject equipment could typically realize if exposed for public sale . . . usually within 12 months of the date of the appraisal.

The forced liquidation appraisal contained the customary proviso that valuations were based on present-day economic trends within 90 days of the appraisal. There was also the customary disclaimer of "your guarantee of actual sales results," since its opinion did "not apply to any past or future dates. On June 30, 2000, BOA entered into a loan agreement with Stelax and extended a line of credit of $5.75 million.

In August 2000, BOA offered to sell loans, including the loan to Stelax, to WFBCI. According to WFBCI, due diligence efforts took three weeks, and between August 7 and August 10, 2000, WFBCI employees visited the BOA premises and reviewed the BOA loan. On September 5, 2000 they purchased the Stelax loan along with several others for $374 million. Marty McKinley, a WFBCI employee and the only person at WFBCI who may have seen the Appraisal, stated, "[he couldn't] visually remember in his mind having seen the [Appraisal]." However, McKinley contends that a value written on the Due Diligence worksheet, "7,398," possibly came from the Appraisal, despite his memory of whether he read it, though it could have come from another source,

Dovebid argues that this number, "7,398," is not evidence to prove WFBCI read and relied on the Appraisal when it made its decision to buy the Stelax loan. In fact, "7,398" was not the value listed on the appraisal. WFBCI states that though the number "7,398" was written down in error, they in fact meant to write "$7,039,850," the forced liquidation value of Stelax's

machinery and equipment provided by Dovebid in the Appraisal. WFBCI presents this evidence, as well McKinley's writing on the top of the Due Diligence worksheet, "need [A]ppraisal," as circumstantial evidence of actual reliance.

On April 20, 2001, BOA assigned the right, title, and interest in the Loan & Security Agreement for the Stelax loan to WFBCI, pursuant to an Assignment Agreement and Asset Sale Agreement. WFBCI acknowledges that Stelax had a low credit rating at the time, but it was satisfied with the appraised value of assets that served as collateral for the Stelax loan. WFBCI claims that Dovebid was negligent in the performance and preparation of the Appraisal, and that WFBCI reasonably relied on the Appraisal to its detriment, which was realized when the receiver sold Stelax's equipment for much less than Dovebid had valued it in the Appraisal.

## V. DISCUSSION

In order to prove negligent misrepresentation, a plaintiff must show: (1) the defendant made a "false statement of material fact;" (2) the defendant had the "intention to induce the other party to act;" (3) the plaintiff relied "on the truth of the statement;" (4) "damage to the other party resulting from such reliance;" and (5) the "defendant owes a duty to the plaintiff to communicate accurate information." *Kemper/Prime Indus. Partners v. Montgomery Watson Americas, Inc.*, 487 F.3d 1061, 1064 (7th Cir. 2007). Whether plaintiff's reliance was actual and reasonable are questions of fact. *Kopley Group V., L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 229 (Ill. App. 2007); *General Motors Acceptance Corp. v. Central National Bank*, 773 F2d 771, 779 (7th Cir. 1985).

The maker "of a negligent misrepresentation is subject to liability to only those persons for whose guidance he knows the information is to be supplied and to them only for the loss

5

incurred in the kind of transaction in which the information is expected to influence them."
*Cahill v. Eastern Benefit Sys., Inc.*, 603 N.E.2d 788, 792 (Ill. App. 1992). Specifically, "one who in the course of his business or profession supplies information for the guidance of others in their business transactions is liable for negligent misrepresentations that induce detrimental reliance." *General Elec. Capital, Corp. v. Equifax Serv., Inc.*, 797 F. Supp. 1432, 1448-49 (N.D. Ill. 1992) (quotations and citation omitted).

To defeat Defendant's Motion for Summary Judgment, WFBCI must show that there is a genuine issue of material fact as to its actual reliance on the Appraisal and the reasonableness of that reliance. Because WFBCI presents indirect evidence of actual reliance, as well as evidence of the reasonableness of any reliance, there is a genuine issue of material fact, and Dovebid's Motion for Summary Judgment is denied.

**A. Actual Reliance**

Dovebid asserts that WFBCI cannot show actual reliance. Bruce McGrath, WFBCI's Chief Credit Officer and Senior Credit Manager, indicated that McKinley was the only person at WFBCI who reviewed the Stelax loan documents prior to the decision to the purchase. In his deposition, McKinley stated that he had no memory of reading the Appraisal. Moreover, McGrath discussed in his deposition that he did not remember requesting the Appraisal from BOA.

WFBCI alleges that its practices and procedures in determining the value of equipment and machinery, such as at Stelax, would require an appraisal to determine the value of the equipment. WFBCI argues that it would not have been within their custom and practices to request an appraisal and not look at it. McKinley cites to his writing on the top of the Due

6

Diligence worksheet, "need [A]ppraisal," as circumstantial evidence of actual reliance. WFBCI also relies on the number "7,398" written on the Due Diligence worksheet as evidence that McKinley did in fact read the Appraisal intending to actually write "$7,039,850," the stated forced liquidation figure. However, McKinley admitted in his deposition that it was only "possible," that the number came from the Appraisal.

Dovebid cites several cases for the proposition that actual reliance may not be presumed or inferred by the court in a claim for negligent misrepresentation. Dovebid relies primarily on *Cahill v. Eastern Benefit Systems, Inc.,* and *Morse v. Abbot Laboratories*, arguing that circumstantial evidence of reliance is not enough to prove actual reliance. Dovebid further states that evidence of custom and practice is insufficient to establish actual reliance. *Fin. Sec. v. Assurance, Inc. v. Stephens, Inc.*, 2004 U.S. Dist. LEXIS 18513, *32, (N.D. Ga. Aug. 23, 2004).

It is true that under Illinois law "[c]laims for negligent misrepresentation require a showing of actual reliance." *Cahill v. Eastern Benefit Sys., Inc.*, 603 N.E.2d 788, 792 (Ill. App. 1992) (citing *Morse v. Abbott Labs.*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991)). However, the cases Dovebid relies on do not require direct evidence of actual reliance. In *Morse*, plaintiff's claims for negligent representation were based on the fraud-on-the-market theory. There, the court explicitly required actual reliance, and found the fraud-on-the-market theory insufficient to satisfy the actual reliance requirement. *See also Gilford Partners, L.P. v. Sensormatic Elecs. Corp.,* 1997 U.S. Dist. LEXIS 19032 * 43 (N.D. Ill. Nov. 24,1997). In this case, WFBCI does not suggest circumstances akin to the fraud-on-the-market theory, but rather it submits evidence of actual reliance. In *Good v. Zenith Electronics Corporation*, another case cited by Defendant, the court elaborated on what actual reliance means: "Because [plaintiff] cannot show that he was

7

aware of the [alleged misrepresentation] when buying [defendant's] stock, he cannot establish that he relied on the alleged misrepresentations." 751 F. Supp. 1320, 1323 (N.D. Ill. 1990). Here, Plaintiff argues that it was actually aware of the Appraisal, a fact which they argue may be inferred from the indirect evidence they present. In *Information Resources, Inc. Securities Litigation*, 1994 U.S. Dist. LEXIS 4500, at *21 (N.D. Ill. April 7, 1994), the court held that where plaintiffs alleged that they "generally" read annual reports, "most likely evaluated brokerage materials" that they "may have" received prior to a stock purchase, but could not remember whether they actually did so, they could not show actual reliance. However, here Plaintiff puts forth more than custom and practice - it points to the "7,398" figure. Because the Appraisal is one possible source for this erroneous figure, there is a question of material fact as to whether Plaintiff actually relied on the Appraisal.

### B. Reasonable Reliance

"In determining whether reliance was reasonable, all of the facts which [WFBCI] had actual knowledge of, as well of those it might have learned if it had ordinary prudence, must be taken into account." *Connor v. Merill Lynch Realty, Inc.*, 581 N.E.2d 196, 201 (1991) (citation omitted). Furthermore, for Dovebid, a third party, to be liable for negligent misrepresentation, WFBCI must show that Dovebid is in the business of providing information for the guidance of others for the use in their business. *Univ. of Ill. v. First Am. Nat'l Bank of Nashville*, No. 87-7044, 1989 WL 91859, at * 3 (N.D. Ill. Aug. 8, 1989) (*See also General Electric Capital, Corp.*, 797 F. Supp. at 1449). Dovebid points to valuation language that states that the appraised value of Stelax as of the date of the Appraisal doesn't apply to past or future dates. There is a question

as to the standard practice in the appraisal industry, but WFBCI's expert testifies that reliance on an appraisal within twelve months of its issue is standard practice.

Although Dovebid intended the values in the Appraisal for BOA, it may still be liable to WFBCI because Dovebid's business is that of offering valuation services.[4] The language of the Appraisal states the amounts set forth in the Appraisal are for an orderly liquidation value of Stelax used for a twelve-month period. WFBCI conducted its due diligence in August of 2000, less than a year after Dovebid issued the Appraisal. Although WFBCI was aware of Stelax's poor credit rating, it notes that such ratings were "not uncommon" for a start-up company, which is why, when WFBCI opted to take over Stelax's loan from BOA, it based its decision on the value of Stelax's collateral.

Dovebid argues that WFBCI should have been more diligent in confirming the accuracy of the Appraisal and that doing nothing is not reasonable under any circumstances. Dovebid further maintains that WFBCI, as a sophisticated commercial entity, had sufficient resources available to it to do its own homework. But WFBCI claims to have engaged in three weeks of due diligence and to have followed industry standards. Moreover, WFBCI argues that it is not within its ordinary practice to contact Dovebid to discuss the Appraisal. Although there is some dispute as to this allegation, I must take WFBCI's assertion as true, as I did in my previous opinion. It is true that the Appraisal contains limiting language as to the time period it is valid, however, WFBCI presents expert testimony that reliance upon the Appraisal within twelve months of its issue is standard industry practice. There is a genuine issue of material fact as to

---

[4] "Lack of direct contractual relationship between the parties is not a defense in a tort action in this jurisdiction." *Rozny v. Marnul,* 250 N.E.2d 656, 660 (Ill. 1969) (*See also Quinn v. McGraw-Hill Co., Inc.*, 168 F. 3d 331, 335 (7th Cir. 1999)).

9

whether WFBCI exercised the requisite due diligence before buying the Stelax loan from BOA and whether its reliance on the Appraisal was reasonable. Therefore, Defendant's motion for summary judgment on Count II is denied.

**VI. CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: July 23, 2009